**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

```
FILED

DEC 23

CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

TELECOMMUNICATION SYSTEMS, INC.,

> Plaintiff,

> v.                                                    **Civil Action No. 2:09cv387**

SYBASE 365, INC.,
f/k/a
MOBILE 365, INC.,

> Defendant.

## ORDER

This case involves a patent dispute between Plaintiff Telecommunication Systems, Inc.

("TCS") and Defendant Sybase 365, Inc. ("Sybase 365"). The parties appeared before the Court

for a Markman hearing on December 15, 2009. At the Markman hearing, the Court also heard

argument concerning a Motion to Stay Proceedings Pending Conclusion of *Inter Partes*

Reexamination ("Motion to Stay"), filed by Sybase 365 on November 25, 2009. Having heard

from the parties, and having considered their briefs and exhibits, the Court now addresses the

Motion to Stay and the disputed terms in the Patents at issue.

The Court declines to order a stay of these proceedings pending the outcome of the Patent

and Trademark Office's *inter partes* reexamination. Although granting a stay might arguably

simplify issues for trial and conserve judicial resources, these benefits are greatly outweighed by

the prejudice TCS would face if a stay were granted. Accordingly, the Court **DENIES** Sybase

365's Motion to Stay.

The Court has reviewed United States Patent No. 6,891,811 ("the '811 patent") and United States Patent No. 7,355,990 ("the '990 patent"), as well as the intrinsic and extrinsic evidence submitted by the parties. For the reasons set forth herein, the Court constructs the disputed terms as follows.

The Court **ADOPTS** the following construction for the term "Gateway" in the '811 and '990 Patents: "A combination of hardware, firmware and/or software that allows a 2-way short message service-capable device to interact with one or more HTTP devices by converting information from one protocol to the other protocol."

The Court **ADOPTS** the following construction for the term "Short Message" in the '811 and '990 Patents: "A message limited to 140 bytes capable of being sent or received by a mobile device using a standardized messaging protocol that governs the size and structure of the message."

The Court **ADOPTS** the following means-function construction for the term "Translation Module" in the '811 and '990 Patents: "Function: to translate said short message into an HTTP protocol message and/or to translate said return results into a short message. Means: A combination of hardware, firmware and/or software that translates a short message into an HTTP protocol message and is capable of creating a short message from an HTTP protocol message."

The Court **ADOPTS** the following construction for the term "Two-way Short Message Service Communication" in the '811 Patent: "Bi-directional synchronous communication between a short message service device and an HTTP device."

The Court **ADOPTS** the following construction for the term "Short Message Service Device" in the '811 Patent: "A device that uses standardized communication protocols to allow interchange of short messages."

The Court **ADOPTS** the following construction for the term "HTTP Device" in the '811 Patent: "A combination of hardware, firmware and/or software that is capable of receiving and sending HTTP communications."

The Court **ADOPTS** the following construction for the term "Return Response" in the '811 and '990 Patents: "Response from an HTTP device intended for a short message service device."

I.    **Factual and Procedural Background**

   *1.    Overview*

TCS is a publicly traded company that specializes in wireless technology. Its clients include government agencies and cellphone companies. TCS offers a range of wireless products, from military-grade satellite communication devices to GPS navigation tools for mobile phones. Roughly a quarter of the text messages sent worldwide use some form of TCS technology.

Sybase 365 is a subsidiary of Sybase, a database management software company. Sybase 365 specializes in "mobile messaging services." These services include standard text messaging as well as more advanced mobile phone applications, such as tools for conducting banking transactions on a cellphone. Like TCS, Sybase 365 is a leader in text messaging technology.

TCS and Sybase 365 have fought several battles over patent infringement, including a 2007 willful infringement case decided in favor of TCS. See Telecommunication Systems, Inc. v. Mobile 365, Inc., 2007 WL 2416539 (E.D. Va. 2007). The present dispute began on July 30, 2009. TCS filed a lawsuit against Sybase 365, alleging infringement of two related patents. The first patent, United States Patent No. 6,891,811 ("the '811 patent") is a patent for a "Short Messaging Service Center Mobile-Originated to HTTP Internet Communications." The second patent, United States Patent No. 7,355,990 ("the '990 patent") is entitled "Mobile-Originated to

HTTP Internet Communications." TCS alleges that Sybase 365 has infringed on these patents "through, among other activities, the manufacture, use, importation, sale and/or offer for sale of products, services, methods, and technology permitting the two-way communication of short messages between either a short message service center or a wireless handset, and an HTTP device or an Universal Resource Locator." (Compl. ¶7).

TCS further alleges that Sybase 365 has infringed on these patents "with full knowledge of at least the '811 patent and its applicability to its business and, upon information and belief, the '990 patent and without having taken adequate and necessary steps to avoid infringement of the '811 and '990 patents." As evidence of this claim, TCS submits that Sybase 365 was provided with actual notice of the patents, but failed to respond to TCS's communications regarding the patents and continued to infringe on the patents in "an objectively reckless manner . . . in violation of 35 U.S.C. §284." (Compl. ¶11).

On October 2, 2009, Sybase 365 responded with a separate lawsuit against TCS, alleging infringements of two of Sybase 365's patents. The first patent, United States Patent No. 5,873,040 ("the '040 patent"), is entitled "Wireless 911 Emergency Location." The second patent, United States Patent No. 7,082,312 ("the '312 patent") is a patent for "Short Message Gateway, System and Method of Providing Information Service for Mobile Telephones." Sybase alleges that TCS has infringed on these patents through the sale of "location-based information service for mobile telephones including, but not limited to, TCS' Xy products and services." Unlike TCS, Sybase 365 does not allege that its competitor willfully infringed on its patents in violation of 35 U.S.C. §284.

2.      *The Relevant Patents*

SMS messaging, or "texting," is the predominant form of mobile communication

worldwide.  To summarize briefly, SMS messaging functions by delivering a 140-byte message from a cellular phone to a Short Messaging Service Center, or SMSC.  The SMSC then delivers the message to its intended recipient.  The primary advantage of an SMSC over a direct phone-to-phone communication network is that the SMSC can store a message and deliver it later if the intended recipient has switched off their phone.

Cellular phones are commonly configured for internet access using a standard known as Wireless Application Protocol, or WAP.  WAP functions by allowing the mobile phone user to access a built-in browser programmed into the mobile phone.  The browser transmits data to a WAP gateway, which obtains requested data from the internet and translates it into a programming language the mobile phone can understand.  This reformatted data is then sent to the mobile phone user.

TCS' Patents cover a technology similar to a WAP gateway, described in the Patents as a mobile-to-HTTP protocol gateway (MHG).  In essence, the Patents describe a method whereby a SMSC can translate a text message into a standardized format, send that message to a web server, and translate and send the server's response back to the original user (or other recipients) as a text message.  Unlike a WAP user, a mobile phone user using a MHG can interact with the internet directly through text messaging, without accessing a specialized browser.

3.    *Markman Hearing*

On October 27, 2009, the Court ordered the parties to prepare and submit a joint statement by November 10, 2009 to apprise this Court of the portions of the patent, if any, that are actually in dispute.  The joint statement must identify the following:

1.        The construction of the claims and terms to which the parties agree;

2.          Each side's construction of disputed claims and terms, if any;

3.          Each side's rebuttal to the proposed construction submitted by the opposing party, if any; and

4.          If disputed claims and terms exist, each proposed witness at the claim-construction hearing together with a brief description of the witness' testimony.

See Precision Shooting Equip., Inc. v. High Country Archery, 1 F. Supp. 2d 1041, 1042 (D. Ariz. 1998).

The parties submitted a joint statement on November 10, 2009.  The '990 Patent contains twenty-eight claims, and the '811 Patent contains twenty-seven claims.  The '811 Patent is a continuation of the '990 Patent, and the Patents differ primarily in that the '811 Patent spells out certain abbreviations.  TCS is asserting Claims 1,2,3,6,7, and 8 of the '990 Patent, and Claims 1,2,3,6,7, and 8 of the '811 Patent.   There are seven (7) different disputed terms, four of which are found in both Patents, and three of which found only in the '811 Patent.  The disputed terms are (1) "Gateway," (2) "Short Message," (3) "Translation Module", (4) "Two-Way Short Message Service Communication," (5) "Short Message Service Device," (6) "HTTP Device," and (7) "Return Response."

        4.    Inter Partes *Reexamination*

While this case was pending before the Court, Sybase 365 filed two *inter partes* reexamination requests with the United States Trademark Office (PTO).  These requests were filed on October 2, 2009, and allege that the Patents were invalid due to seven additional pieces of prior art that had not been considered during the patent examination process.

The PTO granted reexamination of the Patents, and has initially rejected all the Claims at

issue. More specifically, on November 10, 2009, the PTO granted reexamination of the '990

Patent, and rejected Claims 1-3 and 6-8. On November 13, 2009, the PTO granted

reexamination of the '811 Patent, and rejected Claims 1-3 and 6-8.

## II.    MOTION TO STAY

Sybase 365 filed the present Motion to Stay on November 25, 2009. Sybase 365 argues

that a stay should be granted because the case is still at an early stage, reexamination will

simplify the proceedings, and a stay will not prejudice TCS. TCS claims that it will be

significantly and unfairly prejudiced by a stay, and that a patent reexamination will not

necessarily simplify the issues at trial.

35 U.S.C. §318 provides as follows:

> Once an order for inter partes reexamination of a patent has been issued under
> section 313, the patent owner may obtain a stay of any pending litigation which
> involves an issue of patentability of any claims of the patent which are the subject
> of the inter partes reexamination order, unless the court before which such
> litigation is pending determines that a stay would not serve the interests of justice.

Although this statutory language may suggest that only a "patent owner" can obtain a stay

pending an *inter partes* reexamination, the Federal Circuit has held that an alleged infringer can

file a motion for a stay. See Proctor & Gamble Co. v. Kraft, Inc., 549 F.3d 842, 848

(Fed.Cir.2008) (rejecting patantee's argument that a stay under Section 318 could not be granted

when requested by an accused patent infringer); SP Techs., LLC v. HTC Corp., 2009 WL

1285933 (N.D. Ill. May 6, 2009) (slip op.) (same).

The decision to issue a stay pursuant to §318 lies "entirely within the discretion of the

court, as it is incidental to the power inherent in this, and every, court to control the disposition

of cases on its docket." Heinz Kettler GmbH & Co. v. Indian Industries, Inc., 592 F. Supp. 2d

880, 882 (E.D. Va. 2009) (Smith, J.) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

A stay should not be granted, however, "unless there is a substantial patentability issue raised in

the inter partes reexamination proceeding." Proctor & Gamble, 549 F.3d at 849.  Assuming this

threshold showing has been met, a district court must consider whether (1) the litigation is at an

early stage, (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving

party, and (3) whether a stay will simplify the issues in question and streamline the trial.  Lincoln

Nat'l Life Ins. Co. v. Transam. Fin. Life Ins. Co., 2009 WL 1108822 (N.D. Ind. 2009)

(collecting cases).

   In the present case, there is no doubt that a substantial patentability issue has been raised

in the *inter partes* reexamination proceeding.  The PTO has issued an initial determination

rejecting each of the Claims in issue.  While it may be true that the "PTO almost always grants

initial rejections in *inter partes* reexaminations," Network Appliance Inc. v. Sun Microsys. Inc.,

2008 WL 4821318 (N.D. Cal. 2008), the PTO's initial rejections and the numerous pieces of

prior art cited therein nonetheless raise a substantial question about the validity of the Patents.

   The Court acknowledges that the PTO's reexamination may result in a simplification of

the issues in this case due to the elimination, narrowing, or amendment of the claims.  Unlike *ex*

*parte* reexaminations, *inter partes* reexaminations have a *res judicata* effect.  See Tomco Equip.

Co. v. Southeastern Agri-Sys., Inc., 542 F. Supp. 2d 1303, 1309 (N.D. Ga. 2008).  The PTO is

also statistically more likely to reject all claims at issue in an *inter partes* reexamination than in

an *ex parte* reexamination.  See Soverain Software, LLC v. Amazon.com, Inc., 356 F.Supp. 2d

660, 662 (E.D. Tex. 2005) (PTO finds all allegedly infringed claims invalid "in only 12% of [*ex*

*parte*] reexaminations requested by a third party"); United States Patent and Trademark Office,

Inter Partes *Reexamination Filing Data* (June 30, 2009), *available at*

http://www.uspto.gov/web/patents/documents/inter_partes.pdf.  This simplification should not be

overstated, however. The PTO rejects all allegedly infringed claims in only a slight majority of cases. See Inter Partes *Reexamination Filing Data, supra* (noting rejection of all claims in only 60% of *inter partes* reexaminations)

Despite the possibility of simplification of the issues, the Court declines to order a stay pending an *inter partes* reexamination. The Court reaches this conclusion because it finds that a stay pending reexamination would unduly prejudice TCS. As Judge Newman of the Federal Circuit recently noted, the average pendency for an *inter partes* reexamination is 41.7 months. See Fresenius USA, Inc. v. Baxter Int'l, Inc., 582 F.3d 1288, 1305 (Fed. Cir. 2009) (Newman, J., concurring). Sybase 365 is correct, of course, that some courts have granted stays pending reexamination despite the prospect of a drawn-out PTO proceeding. But the prejudice to the non-moving party must be measured not only by the delay attendant to a PTO examination, but also in terms of the length of an alternative proceeding in a district court. This judicial district holds the record for fastest disposition of patent cases, resolving cases on average within half a year. See Kimberly A. Moore, Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation, 83 J. Patent & Trademark Soc. 558, 575 (2001). Thus, the prejudice which would result from a stay in the present case is more significant than it would be if the parties were litigating in a district where judicial proceedings take longer to resolve.

Considering the importance of TCS's Patents to its business and the likely length of a stay pending reexamination, the Court finds that a stay of this proceeding is not appropriate. The Court is mindful of the fact that some courts, including courts within this district, have granted stays pending reexamination under circumstances arguably similar to the case at hand. See, e.g., NTP v. T-Mobile USA, 2007 WL 3254796 at *2–*3 (E.D. Va. Nov. 2, 2007). The Court would respond to this point, however, by noting that other courts have denied a stay under equally analogous circumstances. See, e.g. ESN, LLC v. Cisco Sys., Inc., 2008 WL 6722763 (E.D. Tex.

9

Nov. 20, 2008).  Before ruling on a motion for a stay pending *inter partes* reexamination, a court must carefully balance the utility of expert PTO review against the patent holder's right to expeditious judicial enforcement.  It is not surprising that different courts, facing different docket pressures, might rule differently on this question.

Sybase 365's Motion to Stay is **DENIED.**

## III.   LEGAL STANDARD FOR MARKMAN HEARING

The purpose of a Markman hearing is assist the Court in construing the meaning of the patent at issue. Markman v. Westview Instruments, Inc., 116 S. Ct. 1384 (1996); Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).  Patents consist of "claims," and claim construction "is a question of law, to be determined by the court." Id.  By interpreting the words used in a claim, courts explain the scope of the claim, which ultimately defines the scope of the patented invention. See Gart v. Logitech, Inc., 254 F.3d 1334, 1339-40 (Fed. Cir. 2001); HERBERT F. SCHWARTZ, PATENT LAW AND PRACTICE § 5.I (4th ed.  2003).  Where there is a dispute about claim meanings, claim construction is required before determining issues of infringement. Apex, Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1370 (Fed. Cir. 2003). Claim construction is limited, however, to claims "that are in controversy, and only to the extent necessary to resolve the controversy." Vivid Techs., Inc. v. Am. Science & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999).

The Federal Circuit has given the following description of the claim construction process:

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention-the inventor's lexicography-must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, viz., the patent specification and the prosecution history.

Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (quoting Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed.Cir.1998)).

Unless the ordinary meaning of the claim language "as understood by a person of skill in the art" is readily apparent, a court must look "to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" Id. at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Innova, 381 F.3d 1111 at 1116.

These different sources are not considered equal; rather, they are a "hierarchy of analytical tools." Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1344 (Fed.Cir.1998). The language used in the claim is the first step and most important step of the court's analysis, followed by the "rest of the intrinsic evidence." Adv. Cadiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294 (Fed. Cir. 2001). When interpreting technical terms in a patent document, a court should give it the "meaning that it would be given by persons experienced in the field of the invention." Hoechst Celanese Corp. v. BP Chemicals Ltd., 78 F.3d 1575, 1578 (Fed. Cir. 1996). In other words, a court must "give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art." Honeywell Intern., Inc. v. International Trade Com'n, 341 F.3d 1332, 1338 (Fed. Cir. 2003).

Second on the "hierarchy of tools" is the specification, the written description describing the invention that includes the claims. Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005). It has been described as "a concordance for the claims," which is "based on the statutory

requirement that the specification 'describe the manner and process of making and using' the

patented invention. Id. (internal citation omitted). The United States Court of Appeals for the

Federal Circuit has instructed that the best way to "understand[ ] a technical term is the

specification from which it arose, informed, as needed, by the prosecution history." Id.

The prosecution history is the third most important tool for a court when construing a

claim. The prosecution history of a patent contains:

> . . . all express representations made by or on behalf of the
> applicant to the examiner to induce a patent grant.... Such
> representations include amendments to the claims and arguments
> made to convince the examiner that the claimed invention meets
> the statutory requirements of novelty, utility, and nonobviousness.
> Thus, the prosecution history (or file wrapper) limits the
> interpretation of claims so as to exclude any interpretation that may
> have been disclaimed or disavowed during prosecution in order to
> obtain claim allowance.

Jonsson v. Stanley Works, 903 F.2d 812, 818 (Fed. Cir. 1990). "The Court should consult the

prosecution history to determine whether the patent applicant 'consistently and clearly use[s] a

term in a manner either more or less expansive than its general usage in the relevant

community." Ortho-McNeil, 348 F. Supp. 2d 713, 723 (N.D. W. Va. 2004).   The Federal

Circuit has cautioned, however, that "because the prosecution history represents an ongoing

negotiation between the PTO and the applicant, rather than the final product of that negotiation,

it often lacks the clarity of the specification and thus is less useful for claim construction

purposes." Phillips, 415 F.3d at 1317.

Accordingly, claim interpretation begins with the claims themselves, the "specification"

or written description and, if in evidence, the prosecution history. Id. at 1346. This is the

"intrinsic evidence" the Court may consider when construing a claim.  This intrinsic evidence is

privileged because it is the "claims, specification, and file history, rather than extrinsic evidence,

[which] constitute the public record of the patentee's claim, a record on which the public is

entitled to rely." <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Courts may consult extrinsic evidence such as expert testimony under certain circumstances, although caution should be exercised when doing so. If "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term," then "it is improper to rely on extrinsic evidence." <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir. 1996). "[I]t is entirely appropriate," however, "perhaps even preferable, for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." <u>AFG Industries, Inc. v. Cardinal IG Co., Inc.</u>, 239 F.3d 1239, 1249 (Fed. Cir. 2001) (citing <u>Pitney Bowes, Inc. v. Hewlett-Packard Co.</u>, 182 F.3d 1298, 1309 (Fed. Cir. 1999). Accordingly, when determining, for example, what someone skilled in the art would understand, "the court should consider the testimony of scientific witnesses." <u>Ortho-McNeil</u>, 348 F. Supp. 2d at 723.

## IV.    CONSTRUCTION OF DISPUTED CLAIMS

### 1.    Gateway

Claim 1 of the '990 Patent states as follows:

> A gateway, comprising: a first communication path to accept a short message from a mobile device; a translation module to insert said short message into an Hypertext Transfer Protocol (HTTP) message; a second communication path to push said HTTP message to at least one Universal Resource Locator (URL); and a return communication path to receive a return message relating to said HTTP message.

The '811 Patent contains similar language. TCS proposes the following construction of "gateway": "A combination of hardware, firmware and/or software that allows a 2-way short message service-capable device to interact with one or more HTTP devices." Sybase 365 proposes the following construction: "A device that connects networks using different

communications protocols and converts information from one protocol to the other protocol." The primary dispute between the parties is whether a gateway can be a combination of multiple hardware, firmware, and software elements, or rather a discrete "stand-alone device."

TCS's construction of a gateway as a "combination of hardware, firmware and/or software" is clearly preferable. The Court begins by considering the language of the claim. See Adv. Cadiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294 (Fed. Cir. 2001). The claim describes a gateway "comprising" four discrete parts: a first communication path, a translation module, a second communication path, and a return communication path. Sybase 365 concedes that the gateway "contains [multiple] elements,"[1] but claims that the "logical conclusion to be drawn from this language is that the gateway is a device that is installed between system elements and translates from one protocol to the other." The logical conclusion to be drawn from the claim language is precisely the opposite. The claim language clearly and unambiguously refers to a combination of three communication paths and a "translation module." A construction limiting "gateway" to a single, stand-alone device would conflict with the Claim language.

Sybase 365 notes that the "gateway is consistently and repeatedly shown to be a discrete and unified object in every figure in the patent." While this may be true, it does not follow that the gateway itself is a discrete and unified object. The figures depict "wireless network" and "internet" as stand-alone objects, but certainly no one skilled in the art would suggest that the internet is a "device."[2] Accordingly, the Court does not interpret the figures or specifications to

---

[1] Sybase 365 claims that the gateway contains three elements: a first communication path, a translation module, and a second communication path. It is unclear why Sybase 365 does not include the claimed "return path" in the gateway.

[2] It is well-settled that the internet is, in fact, a series of tubes. "The Internet is not something you just dump something on. It's not a truck. It's a series of tubes." Communications Reform Bill: Full Committee Markup Before The S. Comm. on Commerce, Science &

suggest that "gateway" is limited to a single, discrete device.

Sybase 365 notes that in discussing prior art in connection with the present Patents, a PTO Examiner referred to a "Proxy Server Device" as a "gateway." (J.A. 408). Statements by a Patent Examiner do not necessarily limit the scope of a Claim, however. See Dow Chemical Co. v. SumitomoChem. Co., 257 F.3d 1364, 1382 (Fed. Cir. 2001). Moreover, the Court does not read the Examiner's statement to suggest that a gateway is *limited* to a stand-alone device. Although a "proxy server device" may be an example of a gateway, there is nothing in the Examiner's statement to indicate that a distributed system of hardware, software, and firmware cannot also be a gateway.

Although the Court finds TCS's proposed construction better comports with the language of the Claim, the Court agrees with Sybase 365 that TCS's proposed construction is too broad. A variety of hardware, software, and firmware---ranging from the battery in the mobile device to the HTTP device itself---"allows" interaction between a mobile device and an HTTP device. It is important to limit the scope of "gateway" by reference to the specific function that the "gateway" serves, specifically, converting information from one protocol to another. Thus, the Court adopts a modified version of TCS's proposed construction of "gateway": "A combination of hardware, firmware and/or software that allows a 2-way short message service-capable device to interact with one or more HTTP devices by converting information from one protocol to the other protocol."

2.      *"Short Message"*

As discussed above, an element of the "gateway" in Claim 1 is "a first communication

Transportation, 109th Cong. (2006) (statement of Sen. Ted Stevens), available at http://www.publicknowledge.org/node/497.

path to accept a short message from a mobile device." TCS proposes the following construction of "short message": "A message capable of being sent or received by a mobile device using a standardized messaging protocol that governs the size and structure of the message." Sybase 365 proposes the following construction: "a message limited to 160 bytes that is transmitted using the SMPP protocol."

TCS's definition is far too broad while Sybase 365's definition is too narrow. On the one hand, TCS's definition seemingly encompasses almost any form of wireless communication sent by a mobile phone. The definition would include, for example, a message sent via Wireless Markup Language (WML), which is entirely distinct from what is commonly known as "short messaging." On the other hand, although Sybase 365 is correct that most short messages are ultimately sent via Short Message Peer-to-Peer Protocol (SMPP) and are limited to 160 characters, there are a handful of alternative protocols, and it is possible that the 160-character limit will be relaxed as bandwidth improves.

Given the choice between the two, Sybase 365's construction is preferable. TCS's Patents are clearly not broad enough to cover its proposed construction. The technology for standardized biderectional communication between mobile devices and internet servers has been around for some time, and is commonly implemented through Wireless Application Protocol (WAP). TCS's patents are intended as an improvement over WAP technology, in that a user can communicate with an internet server without entering a specialized browser. But messages sent through a WAP browser, just like messages sent by SMS messaging, are "message[s] capable of being sent or received by a mobile device using a standardized messaging protocol that governs the size and structure of the message." The *raison d'etre* of TCS's patents is to allow communication through a very particular type of message—commonly known as "text

messaging." A broad definition of "short message" that would include WAP, WML, and various other standardized messaging protocols would carry TCS's Patents far beyond their intended scope.

Although "short message" is not expressly defined in the claim or in the specifications, the specifications indicate that a "short messsage" is a message transmitted by "a service called short messaging service (SMS)," and that SMS is a service included in a "standard . . . now known as the global standard for mobiles (GSM)." Because SMS messages are limited to 140 bytes, the most plausible reading of this specification is that "short message" is a SMS-standard message limited to 140 bytes. Accordingly, the Court adopts the following construction: "A message limited to 140 bytes capable of being sent or received by a mobile device using a standardized messaging protocol that governs the size and structure of the message." See Sinorcgchem Co. Shandong v. ITC, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (construing "controlled amount" to mean an amount "up to about 4% of H2O" where specification used language "e.g., up to about 4% H2O").

Sybase 365's proposed construction is similar, but allows for larger short messages of up to 160 bytes. As discussed above, GSM-standard short messages are limited to 160 *characters* and 140 *bytes*. Sybase 365 appears to draw the higher 160-byte limit from the Patent specification, which describes "a short_message" as a "payload containing up to 160 bytes of data." The Court views "short_message," which is a data response from an HTTP device, as being different from a "short message" received by a mobile phone. Specifically, HTTP devices typically send data in 8-bit Unicode format. See Mark Davis, *Moving to Unicode 5*.1 (May 5, 2008), *available at* http://googleblog.blogspot.com/2008/05/moving-to-unicode-51.html (noting that Unicode is the most common encoding in webpages indexed by the search engine Google).

Mobile devices, on the other hand, receive data in a 7-bit GSM alphabet. Thus, a 160-character Unicode message sent from an HTTP device would take up 160 bytes of data, but a mobile device would receive that same 160-character message as a 140-byte GSM-standard message. The reference to "short_message" in the specification refers to a 160-byte message encoded in an 8-bit format; the reference to "short message" in the Claim refers to a 140-byte message encoded in a 7-bit format. As the Court is called to interpret "short message," not "short_message," the Court rejects Sybase 365's proposed 160-byte limit and interprets "short message" as limited to 140 bytes.

TCS notes that the specification states that short messages are "*typically* up to 160 characters," and argues that this reference contemplates a "short message" that may be larger than 140 bytes. While this is not an unreasonable interpretation, the Court interprets this portion of the specification to mean that a 140-byte message may contain *fewer* than 160 characters, depending on the alphabet that is used. While American users typically use a 7-bit alphabet that supports 160 characters in a 140-byte message, messages sent in other languages—such as Arabic, Chinese, or Russian—must be sent in a 16-bit alphabet that limits a message to 70 characters. Thus, although short messages sent via the 140-byte SMS standard are typically limited to 160 characters, messages sent in different languages may be more limited in length.

TCS further notes that a short message may not contain 160 bytes of user-inputted data, or may not contain any inputted data at all. It is obvious that a message "limited to 160 bytes" can contain less than 160 bytes of user-inputted information, however. To defeat Sybase 365's proposed construction, TCS would have to show that its Patents contemplate a message *longer* than 160 bytes. There is nothing in the specifications or claim language to support this interpretation, and the repeated references to SMS protocol weigh strongly in favor of the

contrary reading.[3]

Finally, TCS points to a portion of the specification stating that "[t]he short_message field contains up to 254 octets of short message data." TCS argues that this portion of the specification shows that the Claims contemplate short messages in excess of 140 bytes. The Court rejects this argument for the same reason that it rejected Sybase 365's proposed 160-byte limit. The data limitations of a "short_message field" are unrelated to the data limitations of a "short message," because the former is transmitted using a different protocol, namely, SMPP. The 254-byte limit is a SMPP-standard limitation, unrelated to the size of a "short message" transmitted via SMS. See ColdFusion Developer's Guide, *available at* http://livedocs.adobe.com/coldfusion/8/htmldocs/help.html?content=UseSMSGateway_06.html (discussing 254-byte limit of SMPP).

Although the Court largely adopts Sybase 365's proposed construction, the Court declines to read a limitation into the Patents requiring the short message to be transmitted using "SMPP protocol." This interpretation would conflict with the language of the Claim. The '990 Patent's Claim refers to a "short message from a mobile device" and a "short message originated from a mobile device." A mobile device cannot transmit a message using SMPP protocol. SMPP protocol allows for the transmission of data *from* an SMSC to another SMSC, server, or mobile device. It does not allow the transmission of data *from* a mobile device. In other words, there is no such thing as a "message transmitted using SMPP protocol from a mobile device."

---

[3] At the hearing, TCS noted that some mobile device service providers allow for the sending of messages longer than 160 characters via short messaging technology. The Court understands this to be a reference to "Concatenated SMS," a mobile technology that allows a user to write a single long message, splits that message up into smaller 140-byte short messages, and then reassembles these individual short messages into a single long message on the recipient's mobile device. This technology involves the sending of multiple 140-byte short

This technical limitation is reflected in the illustrative embodiments of the Patents. Although the Patents show communication using SMPP, this communication occurs between the SMSC and a Wireless Internet Gateway.

To illustrate the absurdity of Sybase 365's construction, consider a user who sends a message to an SMSC. If this message is then transmitted via SMPP to another server, it qualifies as a "short message." But if that same message is dropped by the SMSC, or it is transmitted via a protocol other than SMPP, it somehow loses its character as a "short message" and becomes something else entirely.

TCS's Patents may or may not be limited to messages sent from server to server via SMPP protocol. But the Court cannot read such a limitation into the definition of "short message." The Court adopts the following construction of "short message": "A message limited to 140 bytes capable of being sent or received by a mobile device using a standardized messaging protocol that governs the size and structure of the message."

3.     *"Translation Module"*

Claim 1 includes a "translation module to insert said short message into an Hypertext Transfer Protocol (HTTP) message." TCS proposes a construction of "translation module" as follows: "A combination of hardware, firmware and/or software that inserts a short message into an HTTP protocol message and is capable of creating a short message from an HTTP protocol message." Sybase 365 argues that 35 U.S.C. §112, ¶6 applies,[4] and the term should be constructed as a means-plus-function claim element. Sybase 365's proposed means/function

messages, not the sending of a single short message that exceeds 140 bytes.
    [4] This statute provides as follows: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding

construction is "Function: to insert said short message into an HTTP protocol message;

Corresponding Structure: poster 408 formulates an HTTP protocol POST command based on

the value of the esm_class in the SMPP message, whereby: (i) if the esm_class value equals '0',

the POST command includes the message body; and (ii) if the esm_class value equal '16', the

POST command includes a resp_track_id and the message body."

Because Claim 1 does not use the word "means," there is a presumption that §112, ¶6

does not apply. This presumption can be rebutted by showing that the claim term "fails to recite

sufficiently definite structure," or "recites function without reciting sufficient structure for

performing that function." TriMed, Inc. v. Stryker Corp., 514 F.3d 1256, 1259 (Fed. Cir. 2004).

Under certain circumstances, the Federal Circuit has found terms such as "mechanism,"

"element," and "device" to be "generic structural terms" which trigger the application of §112,

¶6. See Welker Bearing Co. v. PHD, 550 F.3d 1090 (Fed. Cir. 2008) ("mechanism for moving

said finger" is means-plus-function element); MIT v. Abacus Software, 462 F.3d 1344 (Fed. Cir.

2006) ("colorant selection mechanism" is means-plus-function element).

"Translation module" is plainly phrased in functional terms. See MIT, 462 F.3d at 1344

("colorant selection mechanism" is functional element). The question is whether Claim 1

"recites sufficient structure for performing that function." TriMed, Inc., 514 F.3d at 1259. TCS

argues that it does because the specifications "illustrate an exemplary system adapted to push

mobile originated messages to an IP (web) server using *standardized equipment and message*

*protocols*." This argument is unpersuasive. Even assuming, *arguendo*, that the specifications

recite sufficient structure for a translation module, the question is whether the *claim language*

recites sufficient structure. Section 112, ¶6 applies when an inventor uses a generic term which

structure, material, or acts described in the specifications and equivalents thereof."

"*requires* illumination from the specification." Duratech Indus. Int'l v. Bridgeview Mfg., 2008 WL 4221637 (Fed. Cir. 2008) (nonprecedential) (emphasis added). Thus, a party cannot avoid the application of §112, ¶6 by arguing that the specifications provide necessary structural detail.

If anything, the fact that the specifications describe a structure for a translation module cuts against TCS's construction, and in favor of the application of §112, ¶6. In MIT v. Abacus Software, the Federal Circuit noted that the applicant could have used structural language in the claim. But because the inventor instead used the generic phrase "mechanism for moving said finger," the Federal Circuit found that the inventor intended to describe the claim in means-function terms. In the present case, the inventors could have used the language "standardized equipment and message protocols" in Claim 1, but instead chose to use the generic term "translation module." This strongly suggests that they intended to describe "translation module" in means-function terms.

The Court finds that §112, ¶6 applies, and therefore must undertake a two-step analysis. "First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs that function." Applied Medical Resources v. U.S. Surgical, 448 F.3d 1324, 1332 (Fed. Cir. 2006).

Claim 1 states the translation module's function is "to insert said short message into an HTTP protocol message." This matches Sybase 365's proposed construction. In Claim 6, however, the "translation module" is given another function, namely, to "insert[] said return results into a short message." Thus, although Sybase 365's proposed function construction is unobjectionable for purposes of Claim 1, it is too narrow for purposes of Claim 6. The meaning of a claim term "must be defined in a manner that is consistent with its appearance in other claims in the same patent." CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1149 (Fed. Cir.

1997). The Court adopts the following construction of the translation module's function "to insert said short message into an HTTP protocol message, and/or to insert said return results into a short message."

Because the Court has rejected Sybase 365's proposed function, it must also reject Sybase 365's proposed structure. The Court instead adopts the following construction of the translation module's corresponding structure: "A combination of hardware, firmware and/or software that translates a short message into an HTTP protocol message and is capable of creating a short message from an HTTP protocol message."

    *4.*    *"Two-Way Short Message Service Communication"*

In the '811 Patent, Claim 1 describes the gateway as facilitating "two-way short message service communication between a short message service device and an HTTP device." Sybase 365 proposes construing "two-way short message service communication" as "a short message received in response to an HTTP message or vice versa." TCS proposes construing the phrase to mean "Bi-directional communication between a short message service device and an HTTP device."

At the <u>Markman</u> hearing, the parties agreed that TCS's Patents require responsive communication between a mobile device and an HTTP device. In other words, the Patents require *both* "sending a short message from" a wireless device *and* "returning data back to said wireless device" from an HTTP device in response to the original short message. '811 Patent, Claim 9. Sybase 365 objects to TCS's proposed construction because TCS's construction would include nonresponsive spontaneous communication between a mobile device and an HTTP device. To put the issue in somewhat less technical terms, the Patents are limited to a communication wherein a mobile device asks "Do you like cookies?" and the HTTP device

responds "yes." TCS's construction would include communication wherein a mobile device

states "I like cookies," and the HTTP device states "The sky is blue."

The parties apparently agree that TCS's proposed construction is overly broad. The

Court finds that this overbreadth can be corrected, however, by adding the term "synchronous"

into the construction. The Court adopts the following construction: "Bi-directional synchronous

communication between a short message service device and an HTTP device." This construction

emphasizes the requirement that the communication be responsive, while otherwise hewing

closely to the original terms of the Patent.

5.     *"Short Message Service Device"*

In the '811 Patent, Claim 1 describes the gateway as facilitating "two-way short message

service communication between a short message service device and an HTTP device." The

parties dispute the meaning of "short message service device." TCS construes "short message

service device" as "a device that uses standardized communication protocols to allow

interchange of short messages." Sybase 365 proposes "[t]he mobile device from which the short

message originates."

TCS's construction comports with the ordinary meaning of "short message service

device." A construction limiting "short message service device" to the "mobile device from

which the short message originates" would read external limitations into the plain meaning of

"short message service device." Although the specifications do consistently refer to

communication between a single SMS device and an HTTP device, the Federal Circuit has held

under similar circumstances that the plain meaning of a term must prevail. See Medegen MMS,

Inc. v. ICU Med., Inc., 2008 WL 4949910 (Fed. Cir. 2008) (nonprecedential) ("plug" given

ordinary meaning despite fact that preferred embodiment repeatedly discussed plug with

elastomeric feature).  Thus, the Court accepts TCS's construction of "short message service

device" as "a device that uses standardized communication protocols to allow

interchange of short messages."

      6.     *"HTTP Device"*

In the '811 Patent, Claim 1 describes the gateway as facilitating "two-way short message

service communication between a short message service device and an HTTP device."  TCS

proposes a construction of "HTTP Device" as "a combination of hardware, firmware and/or

software that is capable of receiving and sending HTTP communications."  Sybase 365 proposes

a construction of "the IP server to which the HTTP protocol message is transmitted."

TCS's construction of "HTTP Device" is preferable for the same reasons that its

construction of "Mobile Device" is preferable.  Although communication with an IP server is an

embodiment of the Patent, the Patent is not limited to this embodiment.  See Medegen, 2008 WL

4949910.  The Court adopts TCS's construction of "HTTP Device" as "a combination of

hardware, firmware and/or software that is capable of receiving and sending HTTP

communications."

      7.     *"Return Response"*

Claim 6 of both Patents state as follows:  "The gateway according to claim 1, wherein:

said second communication path accepts return results from said URL; said translation module

inserts said return results into a short message; and said first communication path transmits said

short message to said short message service center."  TCS proposes construing "Return

Response" as "Response from an HTTP device intended for a short message service device."

Sybase 365 proposes "a response message received by the gateway from an Http device for

eventual delivery to the mobile device."

TCS argues that its construction is straightforward and concise. Sybase365's main objection is that TCS's construction does not require the "return results" to be sent back to the original mobile device. Again, although the preferred embodiment and the scope of the Patent are seemingly limited to this type of communication, the Federal Circuit has indicated that a court should not read such limitations into the plain terms of a Patent. Thus, TCS's embodiment is preferable. The Court adopts the following construction of "return results": "Response from an HTTP device intended for a short message service device."

## V. CONCLUSION

For the reasons set forth in Part II, *supra*, Sybase 365's Motion to Stay is **DENIED**.

The Court **ADOPTS** the following constructions for the following disputed terms:

Gateway: "A combination of hardware, firmware and/or software that allows a 2-way short message service-capable device to interact with one or more HTTP devices by converting information from one protocol to the other protocol."

Short Message: "A message limited to 140 bytes capable of being sent or received by a mobile device using a standardized messaging protocol that governs the size and structure of the message."

Translation Module: "Function: to translate said short message into an HTTP protocol message and/or to translate said return results into a short message. Means: A combination of hardware, firmware and/or software that translates a short message into an HTTP protocol message and is capable of creating a short message from an HTTP protocol message."

Two-way Short Message Service Communication: "Bi-directional synchronous communication between a short message service device and an HTTP device."

Short Message Service Device: "A device that uses standardized communication

protocols to allow interchange of short messages."

HTTP Device: "A combination of hardware, firmware and/or software that is capable of receiving and sending HTTP communications."

Return Response: "Response from an HTTP device intended for a short message service device."

The Clerk of the Court is **DIRECTED** to transmit a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 23, 2009

/s/
Robert G. Doumar
Senior United States District Judge

27